# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FREDRICK SELLERS,

               Plaintiff,

    v.

U.S. DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF INVESTIGATION,

           Defendant.

Civil Action No.  08-0840  (HHK)

## MEMORANDUM OPINION

This action is brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

Before the Court is defendant's motion for summary judgment.  Having considered the motion,

plaintiff's opposition thereto, and the record of this case, the Court concludes that the motion

should be granted.

## I.  BACKGROUND

The Federal Bureau of Investigation ("FBI") began an investigation into plaintiff's

criminal activities in March 2001, focusing primarily on alleged drug and firearms violations.[1]

Mem. of P. & A. in Supp. of Defs.' Mot. for Summ J. ("Defs.' Mem."), Decl. of David M. Hardy

("Hardy Decl.") ¶ 5.  "Further investigation by the Pee Dee Violent Crime Task Force, Florence,

South Carolina, developed information which established plaintiff as the subject in the

---

[1]    For convenience, in this Memorandum Opinion the Court will refer to the
defendant as the "FBI."  As the parties have acknowledged, *see* Pl.'s Opp'n to Def.'s Mot. for
Summ. J. at 4; Defs.' Mot. for Summ. J. at 1 n.1, the proper party defendant is the United States
Department of Justice.

investigation of the kidnaping and murder of Larry Lovie Bristow on December 30, 1998" and, thereafter, "the FBI determined that an interstate element existed in the kidnaping and murder of [Mr.] Bristow." *Id.* On September 21, 2001, plaintiff was found guilty in the United Sates District Court for the District of South Carolina of conspiracy to distribute controlled substances, firearms violations, and kidnaping. *Id.* ¶ 6. On May 23, 2002, he was sentenced to a term of life imprisonment. *Id.*

In May 2007, plaintiff submitted a FOIA request to the FBI's Washington, D.C. headquarters ("FBIHQ") seeking information about himself, particularly "data or information . . . related to and/or generated by the criminal investigation and prosecution of [plaintiff] by federal authorities in and around the U.S. Federal District[] of Florence, South Carolina . . . from January 1995 until the present time."[2] Compl., Ex. A (May 7, 2007 Freedom of Information/Privacy Acts Request) at 1.

The FBI informed plaintiff that it located 430 pages of records potentially responsive to his request, Compl. at 2, and that only the first 100 pages would be released free of charge. *Id.*, Ex. C (July 5, 2007 letter from D.M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBIHQ, regarding Request No. 1079977-000). Accordingly, the FBI released 100 pages of records after having redacted information under FOIA Exemptions 2, 6, 7(C), and 7(E). *Id.*, Ex. D (July 30, 2007 letter from D.M. Hardy) at 1.

---

[2]        It appears that plaintiff sent identical FOIA requests to FBIHQ and to the FBI's Columbia, South Carolina Field Office ("COFO"). Hardy Decl. ¶ 7 & Ex. A (May 17, 2007 FOIA Requests). FBI staff forwarded the COFO request to FBIHQ, and the requests were consolidated and assigned a single tracking number, FOIPA Request Number 1079977. *Id.* ¶ 8 & Ex. B (June 4, 2007 letters from D.M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBIHQ).

The FBI informed plaintiff that there were approximately 295 additional pages available for

processing and that it would process these records if plaintiff agreed to pay a fee of $.10 per page

for duplication.  *Id.* at 2.  After plaintiff agreed in writing to pay these duplication fees, *see*

Compl. at 2, FBI staff disclosed 112 pages of heavily redacted documents but refused to release

183 pages in their entirety.  *Id.*; *see id.*, Ex. J (January 8, 2008 letter from D.M. Hardy regarding

Request No. 1079977-001) at 1.  Both decisions were upheld on administrative appeal.  Compl.

at 2-3; *see id.*, Ex. G, M (respectively, September 28, 2007, and March 31, 2008, letters from

J.G. McLeod, Associate Director, Office of Information and Privacy).

## II.  DISCUSSION

### A.  SUMMARY JUDGMENT IN A FOIA CASE

The Court may grant a motion for summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The moving party bears the burden of demonstrating an absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the

moving party's affidavits may be accepted as true unless the opposing party submits his own

affidavits, declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453,

456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on the information

provided in the government agency's affidavits or declarations when these submissions describe

"the documents and the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record [or] by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v.*

*Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).  Such affidavits or declarations are accorded "a

presumption of good faith, which cannot be rebutted by 'purely speculative claims about the

existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. Sec. & Exch.*

*Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent.*

*Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

B.  THE FBI'S SEARCH FOR RESPONSIVE RECORDS

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of*

*State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27

(D.C. Cir. 1998).  The agency bears the burden of showing that its search was calculated to

uncover all relevant documents.  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir.

1994).  To meet its burden, the agency may submit affidavits or declarations that explain in

reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121,

126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are

sufficient to demonstrate an agency's compliance with the FOIA.  *Id*. at 127.  If the record

"leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is

not proper."  *Truitt*, 897 F.2d at 542.

In its Central Records System ("CRS"), the FBI maintains "administrative, applicant,

criminal, personnel, and other files" acquired and compiled in the course of conducting "its

mandated law enforcement responsibilities." Hardy Decl. ¶ 25. "The CRS is organized into a numerical sequence of files called FBI 'classifications,' which are broken down according to subject matter," and the subject matter may correspond to an individual, organization, activity, or foreign intelligence matter. *Id.* Certain records in the CRS are maintained at FBIHQ; others pertinent to a specific field office are maintained at that field office. *Id.* In order to search the CRS, the FBI uses the Automated Case Support System ("ACS"). *Id.*

The ACS is "described as an internal computerized subsystem of the CRS." Hardy Decl. ¶ 26. One cannot query the CRS for data, such as an individual's name or social security number, and to allow for such a query, "the required information is duplicated and moves to the ACS so that it can be searched." *Id.* Data is retrieved from the CRS through the ACS using alphabetically arranged General Indices. *Id.* ¶ 27. There are two categories of General Indices: "main" entries and "reference" entries. *Id.* The former category "carries the name corresponding with a subject of a file contained in the CRS," and the latter (also known as cross-references) "generally [is] only a mere mention or reference to an individual . . . or other subject matter contained in a document located in another 'main' file on a different subject matter." *Id.*

There are "three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases[.]" Hardy Decl. ¶ 29. They are the Investigative Case Management ("ICM"), Electronic Case File ("ECF"), and Universal Index ("UNI") applications. *Id.* ICM allows for the opening, assignment, and closing of investigative and administrative cases, and for the assignment and tracking of leads. *Id.* ¶ 29(a). When a case is opened, it is assigned a Universal Case File Number which is used by FBIHQ and all field offices conducting or assisting in an investigation. *Id.* The first three digits

correspond to the classification for the type of investigation; a two-letter abbreviation indicates the field office of origin; the last digits denote the individual case file number for a particular investigation. *Id.*

ECF is the "central electronic repository for the FBI's official text-based documents," Hardy Decl. ¶ 29(b), and UNI provides "a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 29(c). The investigative Special Agent assigned to work on the investigation, the Supervisory Agent in the field office conducting the investigation, and the Supervisory Agent at FBIHQ determine whether to index names other than subjects, suspects, and victims. *Id.* ¶ 30. Only information deemed "pertinent, relevant, or essential for future retrieval" is indexed. *Id.* Otherwise, FBI files "would . . . be merely archival in nature." *Id.* Thus, the General Indices to the CRS files "are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual." *Id.*

Using plaintiff's name as a search term, the FBI located no responsive records at FBIHQ, and found one main investigative file, 7A-CO-26699, at its field office in Columbia, South Carolina ("COFO"). Hardy Decl. ¶¶ 31-32. Of the 430 pages of records determined to be responsive to plaintiff's FOIA request, *id.* ¶ 32, the FBI released 358 pages in full or in part, and withheld 72 pages in full. *Id.*; *see id.* ¶¶ 11, 18, 24.

Although plaintiff does not challenge the adequacy of the FBI's for search for responsive records, he objects to the timeliness of the search. He notes that "the FBI did not search for and release the lion's share of documents until after [he] filed the instant lawsuit." Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 4. He asserts that the FBI "should have released the

documents when [he] submitted his [request rather than] wait[ing] until after litigation ha[d] been initiated." *Id.* at 5.  Even if this were true, a delay in an agency's search for records does not render the search inadequate.  *See Perry*, 684 F.2d at 127 (concluding that, based on agency affidavits, "appellees' search for the requested records, though belated, was reasonably complete and thorough").

## C.  THE EXEMPTIONS THE FBI ASSERTS AS A BASIS FOR NOT DISCLOSING REQUESTED INFORMATION

### 1. Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

Here, the FBI's declarant describes the "investigatory records at issue" as "part of the FBI's CRS . . . compiled as a result of the FBI's legitimate law enforcement activities."  Hardy Decl. ¶ 33.  The investigation pertained to the "plaintiff's involvement in a kidnaping in which an

7

interstate element existed along with drug and federal firearms violations." *Id.* ¶ 46. Plaintiff

does not dispute this characterization. The FBI thus meets the threshold requirement for

Exemption 7 by showing that the responsive records were compiled for law enforcement

purposes.

### 2. Exemption 7(C)[3]

Exemption 7(C) protects from disclosure information in law enforcement records that

"could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5

U.S.C. § 552 (b)(7)(C). "To determine whether Exemption 7(C) applies, [courts] 'balance the

privacy interests that would be compromised by disclosure against the public interest in release

of the requested information.'" *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir.

2007) (quoting *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)); *see Beck v.

Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

Generally, the privacy interests of third parties mentioned in law enforcement files are

"substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less

substantial, it is insubstantial." *SafeCard Servs., Inc.*, 926 F. 2d at 1205. "[U]nless access to the

names and addresses of private individuals appearing in files within the ambit of Exemption 7(C)

is necessary in order to confirm or refute compelling evidence that the agency is engaged in

illegal activity, such information is exempt from disclosure." *Id.* at 1206; *see Nation Magazine

v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).

---

[3]      The FBI's "practice . . . is to assert Exemption (b)(6) in conjunction with
Exemption (b)(7)(C). Hardy Decl. ¶ 45 n.8. Because the Court concludes that Exemption 7(C)
applies, there is no need to consider the applicability of Exemption 6 with respect to the same
information. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

"[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  If the public interest alleged is government wrongdoing, then the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)).

a. FBI Special Agents and Support Personnel

Under Exemption 7(C), the FBI withholds the names of and identifying information (such as social security numbers and telephone numbers) about FBI Special Agents "responsible for conducting, supervising, and/or maintaining reports related to the investigative activities concerning plaintiff and others revealed in the documents at issue." Hardy Decl. ¶ 48.  Among other actions, these agents interviewed cooperating witnesses and sources and reviewed materials compiled during the course of the investigation. *Id.*  Special Agents, the declarant explains, are not assigned to a particular investigation by choice, and they "come into contact with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives." *Id.* ¶ 49.  "It is possible for an individual targeted by such law enforcement actions to carry a grudge . . . for years," such that the release of the agents' identities could subject them to reprisal. *Id.*

In addition, the FBI withholds the names of and identifying information about FBI support personnel who "were assigned to handle tasks relating to the official investigation into

9

the activities of plaintiff and others." Hardy Decl. ¶ 50.  According to the declarant, these

support personnel are or were "in positions of access to information regarding official law

enforcement investigations, and therefore could become targets of harassing inquiries for

unauthorized access to investigations if their identities were released." *Id.*

Similarly, the FBI withholds the names of and identifying information (including titles

and ranks) about "state and local law enforcement employees and emergency services

personnel." Hardy Decl. ¶ 54.  The declarant states that the release of their identities "could

subject them . . . to unnecessary and unwarranted harassment," and they "could become prime

targets for compromise of the information in plaintiff's case if their identities were disclosed."

*Id.*

b.  Third Parties

The FBI withholds the names of and identifying information about "individuals who were

interviewed by the FBI or [a] local law enforcement agency during the course of the investigation

of plaintiff and others." Hardy Decl. ¶ 51.  The declarant explains that interviews are productive

investigative tools.  *Id.* ¶ 52.  In order to surmount the interviewees' fear of harassment,

intimidation, retaliation or physical harm if their identities were exposed, the FBI assures them

"that their names and personal identifying information will be held in the strictest confidence."

*Id.*  In addition, the FBI withholds the names of and identifying information (including addresses

and telephone numbers) about third parties who are merely mentioned in the responsive records,

*id.* ¶ 53, "the victim of a crime committed by plaintiff," *id.* ¶ 56, and portions of an autopsy

report in order to protect the privacy interests of the decedent's close relatives, *id.* ¶ 57.  With

respect to the autopsy report, the FBI explains that "[p]ublic release of the results . . . could be

painfully disturbing to the surviving relatives," and "could cause unsolicited and unnecessary attention to be focused on [them]." *Id.* Lastly, the FBI withholds the names of and identifying information about third parties who were of investigative interest to the FBI. *Id.* ¶ 55. In each instance, the FBI's declarant avers that these third parties' substantial privacy interests outweigh the minimal public interest in disclosure. *See id.* ¶¶ 49-50, 52-57.

Plaintiff argues that the FBI cannot justify its decision to withhold the identities of FBI Special Agents who testified at his criminal trial or any information that has "already been released into the public domain." *Id.* Moreover, he argues that Exemption 7(C) no longer applies because "the criminal investigation has come to a conclusion." *Id.* Plaintiff's position cannot be sustained.

Even if plaintiff already knows the identities of trial witnesses, the agency's decision to withhold their names and other identifying information under Exemption 7(C) is justified. *See, e.g., Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 500 (D.D.C. 1997). A witness does not waive his or her interest in personal privacy by testifying at a public trial. *See Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 247 (6th Cir. 1994) (concluding that a law enforcement employee who chooses or is required to testify does not waive personal privacy); *Lardner v. U.S. Dep't of Justice*, No. 03-0180, 2005 WL 758267, at *19 (D.D.C. Mar. 31, 2005) (concluding that the name of a witness who testified at public trial properly was withheld under Exemption 7(C)). Such privacy interests do not diminish with the passage of time, *see, e.g., Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 297 (2d Cir. 1999), and plaintiff cannot argue persuasively that the many years since the investigation took place diminish these individuals' privacy interests in any way.

11

Plaintiff represents that he could use "the information that remains in the hands of the Defendants . . . [to] vindicate himself and be exonerated of the criminal conviction that supports his present sentence of [l]ife imprisonment." Pl.'s Opp'n at 11. He appears to argue, then, that his imprisonment, described as "the miscarriage of justice being affected in this case," is a public interest of such magnitude that it outweighs the third parties' privacy interests. *See id.*

"The D.C. Circuit has consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants." *Fisher v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009) (citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citing cases)); *see Nation Magazine,* 71 F.3d at 894 (acknowledging the "obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation[,]" and extending this interest "to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who provided information during the course of an investigation"). However, "it is well established that an individual's personal interest in challenging his criminal conviction is not a public interest under FOIA because it 'reveals little or nothing about an agency's own conduct.'" *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008) (quoting *Reporters Comm.*, 489 U.S. at 773).

Moreover, individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984), and the courts "have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker*, 349 F.3d at 661 (citations omitted). The FBI properly

withholds the names of and identifying information about all the law enforcement officers and

support personnel, whether federal, state or local, and about the other third parties whose names

appear in the relevant law enforcement records.  *See, e.g., Sussman*, 494 F.3d at 1115 (affirming

decision to withhold names, addresses, telephone numbers, social security numbers, and other

private information pertaining to law enforcement officials, other government employees, and

unnamed third parties).

### 3.  Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law

enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential
> source . . . [who] furnished information on a confidential basis, and,
> in the case of a record or information compiled by a criminal law
> enforcement authority in the course of a criminal investigation. . .,
> information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  "A source is confidential within the meaning of [Exemption] 7(D) if

the source provided information under an express assurance of confidentiality or in

circumstances from which such an assurance could reasonably be inferred."  *Williams v. Fed.*

*Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *U.S. Dep't of Justice v.*

*Landano*, 508 U.S. 165, 170-74 (1993)).  There is no assumption that a source is confidential for

purposes of Exemption 7(D) simply because that source provides information to a law

enforcement agency in the course of a criminal investigation.  *See Landano*, 508 U.S. at 181.

Rather, a source's confidentiality must be determined on a case-by-case basis.  *Id*. at 179-80.

### a.  Confidential Informants

In the course of the FBI's investigation of plaintiff's activities, its Special Agents "sought

13

the assistance of numerous informants to obtain information to aid the investigation," and the declarant states that these informants provided information under an implied grant of confidentiality.  Hardy Decl. ¶ 60.  The case involved "a brutal homicide, possession of firearms, distribution of illegal narcotics, and kidnaping," and the sources "provided specific detailed information linking those crimes to the plaintiff and his associates[,]" *id*. ¶ 62, resulting in the arrest and conviction of plaintiff and other subjects based on information the informants provided.  *Id.* ¶ 63.  Under these circumstances, the declarant states that the informants "have ample reason to expect the highest level of confidentiality" because disclosure of their identities or their statements "could subject them to violent reprisals."  *Id.* ¶ 62.  Through their cooperation with the FBI, the informants "have placed themselves in harm's way should plaintiff or his associates become aware of their cooperation[.]"  *Id.* ¶ 63.

Plaintiff maintains that the FBI does not "demonstrate[] that these sources spoke under condition of confidentiality."  Pl.'s Opp'n at 8.  He argues that "[m]ost – if not all – the informants and other 'confidential sources' have been revealed through judicial proceedings." *Id.*

An agency's duty to disclose information pursuant to the FOIA does not relieve the agency of its obligation to honor its agreements with confidential sources in order to protect their identities and any information they provide in confidence.  Exemption 7(D) not only protects confidential sources, but also protects the ability of law enforcement agencies to obtain relevant information from such sources.  *See McDonnell v. United States*, 4 F.3d 1227, 1258 (3d Cir. 1993) (stating that the "goal of Exemption 7(D) is to protect the ability of law enforcement agencies to obtain the cooperation of persons having relevant information and who expect a

14

degree of confidentiality in return for their cooperation").  "[O]nce an informant's confidentiality

has been established, almost nothing can eviscerate Exemption 7(D) protection."  *Reiter v. Drug*

*Enforcement Admin.*, No. 96-0378, 1997 WL 470108, at *6 (D.D.C. Aug. 13, 1997), *aff'd*, No.

97-5246, 1998 WL 202247 (D.C. Cir. Mar. 3, 1998).  The exemption makes no mention of

waiver, and courts interpreting the exemption literally have held that "once the agency receives

information from a 'confidential source' during the course of a legitimate criminal investigation,

. . . *all* such information obtained from the confidential source receives protection."  *Parker v.*

*Dep't of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991) (citing *Lesar v. U.S. Dep't of Justice*, 636

F.2d 472, 492 & n.114 (D.C. Cir. 1980)) (emphasis added).  Ultimately, protection of

information under Exemption 7(D) depends on whether the source spoke confidentially rather

than the "extent to which that source has already been revealed."  *Lesar*, 636 F.2d at 491.

Whether plaintiff already knows the informants' identities and the information they provided to

law enforcement officers is not relevant to the analysis in this case.

In the alternative, plaintiff argues that the records at issue must be released under the

"public domain doctrine."  Pl.'s Opp'n at 9-10; *see id*. at 5-6.  Because the requested information

"was plastered in the news media at the time of [the] incident and trial," *id.* at 10, plaintiff argues

that there remain no privacy interests to protect.

Under the public domain doctrine, records which otherwise may be exempt from

disclosure under the FOIA "lose their protective cloak" if they have been "disclosed and

preserved in a permanent public record."  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).

"[W]here information requested 'is truly public, then enforcement of an exemption cannot fulfill

its purposes.'"  *Id.* (quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16,

19 (D.C. Cir. 1999)).  A plaintiff who seeks disclosure of such records bears "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983); *see Davis*, 968 F.2d at 1280 (stating that plaintiff must "point to specific information identical to that being withheld").  Plaintiff's argument is not persuasive, given his failure to point to any specific record, document, or information identical to what is being withheld under the claimed exemption.  Accordingly, there is no showing from which the Court can conclude with any confidence that the information sought by plaintiff truly is in the public domain.  *See Cottone*, 193 F.3d at 555.

Courts have held that the violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source.  *See Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (withholding the identity of a source who supplied information about a conspiracy to distribute crack and powder cocaine); *Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 123 (D.D.C. 2008) (withholding the names of and information provided by sources under an implied assurance of confidentiality given the plaintiff's "reported criminal history of kidnapping and the subsequent torture, murder and dismemberment of bodies").  In the circumstances of this case, particularly given plaintiff's convictions for violent felonies, it is reasonable to conclude that the confidential informants provided information to the FBI with an expectation that their identities would not be disclosed.  The Court concludes that their identities and any information from which their identities could be determined properly is withheld under Exemption 7(D).

b.  South Carolina Law Enforcement Division

The FBI received information concerning the criminal activities of plaintiff and other parties of investigative interest to the FBI from the South Carolina Law Enforcement Division ("SLED").  Hardy Decl. ¶ 64.  Printed on SLED's documents was a message which stated in relevant part that the "contents are not to be distributed outside your agency."  *Id.*

The term "source" for purposes of Exemption 7(D) "includes not only individuals such as private citizens and paid informants but also entities such as . . . state and local law enforcement agencies[.]"  *Lesar*, 636 F.2d at 491.  The message printed on SLED's documents suggests that it shared information with the FBI only on the understanding that the contents would be kept confidential.  Accordingly, the Court concludes that the information provided to the FBI by SLED properly is withheld under Exemption 7(D).  *See Thomas v. U.S. Dep't of Justice*, 531 F. Supp. 2d 102, 111 (D.D.C. 2008) (withholding under implied assurance of confidentiality "a Report of Investigation provided by the Metropolitan Police Department which contains the following statement: This report is the property of the Metropolitan Police Department.  Neither it nor its contents may be disseminated to unauthorized personnel."); *Meserve v. U.S. Dep't of Justice*, No. 04-1844, 2006 WL 2366427, at *10 (D.D.C. Aug. 14, 2006) (citations omitted) (withholding under Exemption 7(D) material from the State of Ohio where the transmittal contained a statement that the data contained therein "is only to be used for criminal justice purposes").

17

4.  *Exemptions 2 and 7(E)*[4]

Under Exemption 2 in conjunction with Exemption 7(E), the FBI withholds "certain

information on FBI Form FD-515, an investigations accomplishment report."  Hardy Decl. ¶ 41;

*see id.* ¶ 66.

Exemption 2 shields from disclosure information that is "related solely to the internal

personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The phrase "personnel rules

and practices" is interpreted to include not only "minor employment matters," but also "other

rules and practices governing agency personnel."  *Crooker v. Bureau of Alcohol, Tobacco &*

*Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc).  The "information need not actually

*be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that a matter

'related' to rules and practices is also exempt."  *Schwaner v. U.S. Dep't of the Air Force*, 898

F.2d 793, 795 (D.C. Cir. 1990) (emphasis in original).  Exemption 2 applies if the information

that is sought meets two criteria.  First, such information must be "used for predominantly

internal purposes."  *Crooker*, 670 F.2d at 1074; *see Nat'l Treasury Employees Union v. U.S.*

*Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985).  Second, the agency must show either that

"disclosure may risk circumvention of agency regulation," or that "the material relates to trivial

administrative matters of no genuine public interest."  *Schwaner*, 898 F.2d at 794 (citations

---

[4]        Because plaintiff opposes neither the withholding of internal telephone and
facsimile numbers nor the withholding of polygraph data under Exemptions 2 and 7(E), *see* Pl.'s
Opp'n at 7, the Court deems these matters conceded.  The FBI's declaration establishes that the
material at issue predominantly is used for internal agency purposes, and that it merely relates to
trivial administrative matters of no genuine public interest.  *See* Hardy Decl. ¶¶ 39-40.
Remaining, then, is plaintiff's challenge to the withholding of information pertaining to
investigative techniques and procedures under Exemptions 2 and 7(E).  *See id.*; *see* Hardy Decl.
¶¶ 41, 65-66.

omitted). "Predominantly internal documents[,] the disclosure of which would risk circumvention of agency statutes[,] are protected by the so-called 'high 2' exemption." *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). "High 2" exempt information is "not limited . . . to situations where penal or enforcement statutes could be circumvented." *Id*. at 1208.

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Courts have held that information pertaining to law enforcement techniques and procedures properly is withheld under Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations. *See, e.g.*, *Morley v. Cent. Intelligence Agency*, 453 F. Supp. 2d 137, 156 (D.D.C. 2006) (withholding information pertaining to security clearances and background investigations on the ground that "disclosure of CIA security clearance and investigatory processes would risk circumvention of those processes in the future"); *Piper v. U.S. Dep't. of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) (withholding polygraph test information on the ground that disclosure "has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique," and anticipate or thwart FBI's strategy); *Fisher v. U.S. Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (upholding the FBI's decision to withhold information about law enforcement techniques when disclosure would impair effectiveness, and, within the context of the documents, "could alert subjects in drug investigations about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

A Special Agent submits an FD-515 form "at various stages in an investigation to report statistically important events such as indictments, arrests and convictions, or the recovery of stolen property." Hardy Decl. ¶ 41.  In addition, the form lists "27 publicly known investigative techniques and/or assistance . . . used by the investigative personnel during the investigation." *Id.* ¶ 66.  "Opposite each investigative technique and assistance is a rating column which records a numerical rating from 1 to 4[.]" *Id.*  The ratings "relate[] solely to the FBI's internal practices." *Id.* ¶ 41.  The FBI has redacted the entire rating column. *Id.* ¶¶ 41, 66.  According to the declarant, if the rating column were released, "plaintiff and others involved in criminal violations . . . could change their activities and modus operandi in order to avoid detection and/or surveillance in the future." *Id.* ¶ 66.  The FBI "will use the same or similar techniques and/or assistance to bring similar future investigations to successful conclusions," *id.*, and the agency withholds this information in order "to prevent future circumvention of the law by criminals." *Id.*

Plaintiff argues that the FBI may withhold information pertaining to law enforcement techniques only if those "techniques or procedures are not well known to the public, or are otherwise extraordinary." Pl.'s Opp'n at 7.  This court previously has affirmed the withholding of the ratings column of the form FD-515 under Exemption 7(E).  *See Concepción v. Fed. Bureau of Investigation*, 606 F. Supp. 2d 14, 43 (D.D.C. 2009) (concluding that the FBI properly withheld both the investigative accomplishments report's rating column and information that would reveal techniques and procedures for conducting investigations and undercover operations under Exemption 2 and 7(E)); *Peay v. Dep't of Justice*, No. 04-1859, 2007 WL 788871, at *6 (D.D.C. Mar. 14, 2007) (concluding that the FBI properly redacted the "entire rating column [of

form FD-515] in order to protect ... the specific techniques that were and were not used by the FBI during its investigation of plaintiff and others"); *Perrone v. Fed. Bureau of Investigation*, 908 F. Supp. 24, 28 (D.D.C. 1995) (concluding that the FBI FD-515 form properly is withheld under Exemption 7(E) because "disclosure of this information would help plaintiff or potential criminals predict future investigative actions by the FBI and consequently employ countermeasures to neutralize those techniques"). In view of this authority, plaintiff's argument regarding material withheld by the FBI from disclosure pursuant to Exemptions 2 and 7(E) is without merit.

D. SEGREGABILITY

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The declarant avers that agency staff have "carefully examined the withheld information" and concludes that "the FBI has released all reasonably segregable nonexempt information to plaintiff in response to this FOIA requests to the FBI." Hardy Decl. ¶ 70. Based on the declarant's representations, the absence of any meaningful opposition by the plaintiff, and the record of the case, the Court concludes that all reasonably segregable records have been released.

### III.   CONCLUSION

The FBI establishes that its search for records responsive to plaintiff's FOIA request was reasonable under the circumstances, that it properly withheld information under Exemptions 2, 7(C), 7(D), and 7(E), and that all reasonably segregable material has been released.  Because no material facts are in dispute and the FBI is entitled to judgment as a matter of law, the Court will grant summary judgment in defendant's favor.  An Order accompanies this Memorandum Opinion.


HENRY H. KENNEDY, JR.
United States District Judge

DATE:  February 17, 2010